1  Thomas Joseph Goddard
2  1910 N Main St #627
   Walnut Creek, CA 94596
3  Tel.: (415) 985-5539
   thomas@goddard.app
4  *Plaintiff, pro se*



F I L E D

JUL 14 2025

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

5

6           UNITED STATES DISTRICT COURT

7          NORTHERN DISTRICT OF CALIFORNIA

8                OAKLAND DIVISION

9

10  THOMAS J. GODDARD,
          Plaintiff,                    CV 25-5882

11                                       Case No.:

12  v.                                               EMC

13   NOMA APARTMENTS; SARES-REGIS       COMPLAINT FOR
    GROUP, INC.; CHRISTINA MADRID,
14  in her individual and official capacity;
    TAI WANG, in her individual and     VIOLATIONS OF FEDERAL
15  official capacity; and DOES 1-20,   CIVIL RIGHTS LAWS
          Defendants.                    Fair Housing Act
16

17                                       42 U.S.C. § 3604, § 3617
18                                       Americans with Disabilities Act
                                         42 U.S.C. § 12182, § 12203
19                                       Civil Rights Act
                                         42 U.S.C. § 1983
20                                       California Unruh Act
21                                       Cal. Civ. Code § 51 et seq.
22                                        DEMAND FOR JURY TRIAL

23

24

25

26

27

28

- 1 -

COMPLAINT

Plaintiff THOMAS J. GODDARD, appearing pro se, hereby files this Complaint against Defendants and alleges as follows:

## I. INTRODUCTION

1. This action seeks damages and injunctive relief arising from systematic housing discrimination, disability accommodation denials, and retaliatory conduct violating federal civil rights laws during active state civil rights proceedings. The conduct alleged herein violates the Fair Housing Act, Americans with Disabilities Act, and federal civil rights statutes, occurring during a documented medical emergency requiring immediate judicial intervention to prevent irreparable harm and potential loss of life.

2. On July 10, 2025, Defendants committed the most egregious fair housing violation possible by serving a 3-day notice to pay rent or quit during active California Civil Rights Department mediation proceedings in Case No. 202505-29527122, within 24 hours of Plaintiff's emergency room treatment for hypertensive crisis with blood pressure of 168/103, demonstrating willful retaliation in violation of 42 U.S.C. ğ 3617.[1]

3. Since July 11, 2025, Plaintiff has experienced severe internal bleeding evidenced by black tar-colored stool, indicating upper gastrointestinal bleeding directly correlating with the escalating discrimination and requiring immediate stress reduction and medical intervention to prevent life-threatening consequences, establishing irreparable harm under the *Winter* factors for emergency relief.[2]

## II. JURISDICTION AND VENUE

4. **Jurisdiction:** This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. ğ 1331 because Plaintiff's claims arise under federal law, specifically the Fair

---

[1]The temporal proximity of adverse action within 24 hours of protected activity creates strong inference of retaliatory intent under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973), with housing context providing additional protection under Fair Housing Act anti-retaliation provisions.

[2]Medical literature confirms that upper gastrointestinal bleeding presenting as melena (black tarry stool) constitutes a medical emergency requiring immediate intervention, with stress-induced bleeding creating demonstrable nexus between discrimination and life-threatening harm supporting emergency relief under *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008).

COMPLAINT

Housing Act, 42 U.S.C. § 3601 *et seq.*; the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; and civil rights laws under 42 U.S.C. § 1983. Federal question jurisdiction exists automatically for Fair Housing Act and ADA claims with no amount in controversy requirement.[3]

5. **Divisional Assignment:** Venue and divisional assignment to the Oakland Division are proper because the discriminatory conduct occurred at 1910 N. Main Street, Walnut Creek, California 94596, within Contra Costa County, which falls within the Oakland Division of the Northern District of California pursuant to General Order 12 and because Defendants maintain substantial operations within this divisional territory.[4]

6. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because they form part of the same case or controversy as the federal claims and derive from a common nucleus of operative fact, with judicial resources favoring resolution of all related claims in a single proceeding.[5]

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within the Northern District of California. Additionally, venue is proper under 42 U.S.C. § 3613(a) because the unlawful housing practices alleged herein were committed within the jurisdiction of this Court.[6]

8. This Court has personal jurisdiction over all Defendants because they conduct business in California, maintain California operations, and the discriminatory conduct occurred within California, satisfying the requirements of specific personal jurisdiction under *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). Personal jurisdiction over housing defendants exists through property ownership and management within California,

---

[3]As established in *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205 (1972), the Fair Housing Act provides federal question jurisdiction under 28 U.S.C. § 1331 for all claims arising under 42 U.S.C. § 3601 *et seq.*, with no diversity or amount in controversy requirements.

[4]Northern District of California General Order 12 assigns Contra Costa County cases to the Oakland Division, making divisional assignment mandatory rather than discretionary for cases arising within this geographic area.

[5]Supplemental jurisdiction under 28 U.S.C. § 1367(a) permits federal courts to hear state law claims that "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The "common nucleus of operative fact" test requires that federal and state claims arise from the same transaction or occurrence. See *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Courts may decline supplemental jurisdiction under § 1367(c) if state claims predominate, raise novel issues of state law, or if federal claims are dismissed. Housing discrimination cases routinely include supplemental state civil rights claims sharing common facts with federal violations.

[6]The Fair Housing Act's specific venue provision at 42 U.S.C. § 3613(a) permits suit "in any judicial district in which the unlawful housing practice is alleged to have occurred," providing independent statutory basis for venue in this district.

COMPLAINT

with systematic contacts creating general jurisdiction over corporate defendants.[7]

## III. PARTIES

9. Plaintiff Thomas J. Goddard ("Plaintiff") is an individual residing in Walnut Creek, California. Plaintiff is disabled within the meaning of the Americans with Disabilities Act and Fair Housing Act, with documented conditions including gout substantially limiting walking and standing, anxiety and depression substantially limiting cognitive functioning and daily activities, ADHD substantially limiting concentration and cognitive processing, cervical disk herniation with radiculopathy substantially limiting physical activities, idiopathic vocal cord paralysis requiring prosthetic implant substantially limiting speech and communication, and asplenia creating immunocompromised status substantially limiting immune function and requiring medical accommodations.[8]

10. Defendant NOMA Apartments ("NOMA") is a residential apartment complex and place of public accommodation operating at 1910 N. Main Street, Walnut Creek, California 94596, subject to Fair Housing Act obligations under 42 U.S.C. § 3604 as a provider of housing services and ADA Title III obligations under 42 U.S.C. § 12182 as a place of public accommodation including rental offices, leasing centers, and common areas open to the public.[9]

11. Defendant Sares-Regis Group, Inc. ("Sares-Regis") is a California corporation with registered agent CT Corporation System at 818 W. Seventh Street, Los Angeles, CA 90017, engaged in real estate development, management, and related services, operating as the parent company and management entity for NOMA Apartments and subject to federal

---

[7] Personal jurisdiction requires minimum contacts with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. See *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Specific personal jurisdiction exists when defendants' contacts with California are related to the claims and defendants purposefully directed activities toward California residents. See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Calder v. Jones*, 465 U.S. 783, 789 (1984). General jurisdiction exists when defendants' contacts with California are "continuous and systematic," even if unrelated to the claims. See *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). Property management and housing operations within California constitute systematic contacts establishing general jurisdiction over corporate defendants. See *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).

[8] Each disability meets ADA and Fair Housing Act definitions under 42 U.S.C. § 12102(1) and 42 U.S.C. § 3602(h), with medical documentation from UCSF Medical Center establishing substantial limitation of major life activities as defined in 29 C.F.R. § 1630.2(i), requiring reasonable accommodations in housing under the interactive process mandated by HUD guidance.

[9] While residential units themselves fall outside ADA Title III coverage under *Overlook Mutual Homes, Inc. v. Spencer*, 666 F. Supp. 2d 850 (S.D. Ohio 2009), the rental offices, leasing centers, and common areas constitute places of public accommodation subject to ADA obligations alongside comprehensive Fair Housing Act coverage.

1  civil rights obligations as a housing provider under the Fair Housing Act's comprehensive

2  coverage of all persons engaged in residential real estate transactions.[10]

3  12. Defendant Christina Madrid ("Madrid") is sued in her individual and official capacities

4  as an employee, agent, or representative of NOMA Apartments with direct authority over

5  tenant relations, accommodation requests, and housing decisions. Madrid acted outside the

6  scope of lawful employment and beyond any qualified immunity protection through

7  categorical denials of accommodations stating "Future requests for similar accommodations

8  will not be granted" on May 23, 2025, and coordination of retaliatory conduct violating

9  clearly established federal law under *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).[11]

10  13. Defendant Tai Wang ("Wang") is sued in her individual and official capacities as an

11  employee, agent, or representative of NOMA Apartments with direct authority over tenant

12  relations and accommodation decisions. Wang acted outside the scope of lawful

13  employment and beyond any qualified immunity protection by making explicit

14  discriminatory statements on March 4, 2025, denying the nexus between disability and

15  financial circumstances, stating "Finance situations are not reasonable accommodation and

16  should not cost landlord any financial burden," in direct violation of the 2004 HUD/DOJ

17  Joint Statement on Reasonable Accommodations requiring payment schedule

18  accommodations for disability benefit recipients.[12]

19  14. The true names and capacities of Defendants Does 1 through 20, inclusive, are

20  presently unknown to Plaintiff, who therefore sues these Defendants by such fictitious

21  names. Plaintiff will seek leave to amend this Complaint to allege their true names and

22  capacities when they are ascertained. Does 1-20 include individuals who participated

23  directly in the discrimination, retaliation, and civil rights violations alleged herein,

24  including supervisory personnel who ratified or encouraged the unlawful conduct and

[10] Corporate identification through California Secretary of State records establishes exact legal name and registered agent information required for proper service under Fed. R. Civ. P. 4(h), with parent company liability arising under agency principles and direct participation in housing operations.

[11] Individual capacity liability requires personal involvement in constitutional violations without qualified immunity protection when conduct violates clearly established law. Madrid's categorical denial of accommodations violates clearly established Fair Housing Act requirements known to reasonable housing professionals, defeating qualified immunity under *Hope v. Pelzer*, 536 U.S. 730 (2002).

[12] The 2004 HUD/DOJ Joint Statement on Reasonable Accommodations Under the Fair Housing Act specifically identifies payment timing accommodations for disability benefit recipients as required reasonable accommodations, making Wang's categorical denial a clear violation of established federal guidance that defeats qualified immunity protection.

COMPLAINT

corporate officers who established policies facilitating the discrimination.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Tenancy and Comprehensive Disability Status

15. Plaintiff became a tenant at NOMA Apartments in July 2024, residing in Unit 627 at 1910 N. Main Street, Walnut Creek, California 94596, under a written lease agreement with Defendants that creates a landlord-tenant relationship subject to Fair Housing Act obligations and reasonable accommodation requirements.

16. At all relevant times, Plaintiff has been disabled within the meaning of federal civil rights laws, satisfying all three prongs of the ADA definition under 42 U.S.C. ğ 12102(1): (1) physical or mental impairments that substantially limit major life activities; (2) record of such impairments; and (3) being regarded as having such impairments. Specifically, Plaintiff's documented medical conditions include:

a. Gout causing severe joint pain, inflammation, and mobility limitations substantially limiting the major life activities of walking, standing, and physical movement, with documented flare-ups requiring medication and accommodation;

b. Anxiety and depression substantially limiting cognitive functioning, social interaction, sleeping, concentrating, and daily activities, with ongoing psychiatric treatment and medication management;

c. Attention Deficit Hyperactivity Disorder (ADHD) substantially limiting concentration, cognitive processing, executive functioning, and task completion, requiring environmental accommodations for optimal functioning;

d. Cervical disk herniation with radiculopathy causing chronic pain, nerve impingement, and physical limitations substantially limiting lifting, carrying, neck movement, and upper extremity function;

e. Idiopathic vocal cord paralysis requiring prosthetic implant substantially limiting speech, communication, and breathing, with ongoing medical monitoring and speech therapy;

f. Asplenia (absence of spleen) creating immunocompromised status substantially limiting

1   immune function and requiring medical accommodations, special precautions, and modified

2   living arrangements to prevent life-threatening infections.[13]

3   17. Plaintiff's disabilities substantially limit major life activities including walking,

4   standing, speaking, concentrating, immune function, cognitive processing, social

5   interaction, sleeping, and normal daily activities, requiring reasonable accommodations in

6   housing to ensure equal access and enjoyment of housing services under the Fair Housing

7   Act's mandate that housing providers make reasonable accommodations when necessary to

8   afford disabled persons equal opportunity to use and enjoy housing.[14]

9   **B. Employment Discrimination Foundation and Documented Financial Crisis**

10  18. Plaintiff's current financial crisis directly results from systematic employment

11  discrimination and retaliation at Slickdeals LLC from October 2023 through July 15, 2024,

12  where he was subjected to racial harassment, antisemitic discrimination, and wrongful

13  termination following protected whistleblower activities, destroying his $600,000 annual

14  earning capacity and forcing complete reliance on rapidly depleting State Disability

15  Insurance benefits that create the nexus between disability status and financial

16  circumstances requiring accommodation.[15]

17  19. As documented by California Employment Development Department records accessed

18  July 11, 2025, and attached as Exhibit A to the contemporaneously filed Emergency Ex

19  Parte Application for Temporary Restraining Order, Plaintiff's SDI status shows

20  Remaining Benefit Amount of $6,711.44, Maximum Benefit Amount of $84,240.00, Total

21  Benefits Paid to Date of $77,528.56, and Weekly Payment Rate of $1,620, representing

22  approximately four weeks of income before complete financial destitution with no

23  alternative income source available and no ability to secure employment during disability.

24  20. The nexus between Plaintiff's disabilities and financial hardship is direct, documented,

[13]The disabilities satisfy ADA and Fair Housing Act definitions under 42 U.S.C. § 12102(1) and 42 U.S.C. § 3602(h), with comprehensive medical documentation from UCSF Medical Center establishing substantial limitation of major life activities as defined in 29 C.F.R. § 1630.2(i) and requiring reasonable accommodations under the interactive process mandated by federal law.

[14]The substantial limitation standard requires significant restriction compared to the general population, which Plaintiff's conditions clearly satisfy based on medical documentation and functional impact assessments, triggering accommodation obligations under 42 U.S.C. § 3604(f)(3)(B).

[15]Employment discrimination foundation establishes legitimate basis for financial hardship accommodation requests, with causal nexus between discrimination-induced income loss and disability status creating protected characteristic requiring reasonable accommodation under Fair Housing Act principles established in *Giebeler v. M & B Associates*, 343 F.3d 1143 (9th Cir. 2003).

and legally cognizable: employment discrimination destroyed his earning capacity, medical conditions prevent alternative employment, and disability benefits provide the sole income source requiring accommodation of payment timing to align with benefit delivery schedules, precisely the type of accommodation required by the 2004 HUD/DOJ Joint Statement on Reasonable Accommodations.[16]

## C. Pattern of Accommodation Denials and Discriminatory Statements

21. On March 4, 2025, Plaintiff submitted a written reasonable accommodation request for rent payment timing based on his SDI benefit schedule, which arrives on the 7th of each month rather than the 1st, creating timing misalignment with lease payment requirements that could be easily accommodated without undue financial or administrative burden through simple scheduling adjustment allowing payment within five days of benefit receipt.

22. Defendant Wang explicitly denied this accommodation request through email communication on March 4, 2025, stating in writing: 'Finance situations are not reasonable accommodation and should not cost landlord any financial burden.' This statement demonstrates categorical rejection of accommodation requests without individualized assessment and fundamental misunderstanding of federal accommodation obligations, violating the 2004 HUD/DOJ Joint Statement on Reasonable Accommodations which explicitly requires payment schedule accommodations for disability benefits and the Fair Housing Act's requirement for individualized consideration of accommodation requests.[17]

23. On May 23, 2025, after Plaintiff continued advocacy for his accommodation rights through additional correspondence explaining federal requirements, Defendant Madrid escalated the discrimination by stating in email communication: 'Future requests for similar accommodations will not be granted.' This categorical denial of future accommodations exceeds any lawful employment authority, violates federal requirements for individualized accommodation consideration, and demonstrates willful disregard for

---

[16] The nexus requirement for reasonable accommodations under 42 U.S.C. § 3604(f)(3)(B) is satisfied when accommodation requests relate to disability consequences, including financial impacts of discrimination and benefit scheduling, as confirmed by HUD guidance requiring individualized assessment rather than categorical denials.

[17] Wang's statement constitutes direct evidence of discriminatory intent by categorically denying accommodation based on misconception of federal law. The 2004 HUD/DOJ Joint Statement specifically identifies payment timing accommodations for disability benefit recipients as presumptively reasonable, making categorical denial a clear violation of established federal requirements.

1  clearly established Fair Housing Act obligations requiring case-by-case analysis of

2  accommodation requests.[18]

3  24. On May 30, 2025, Plaintiff submitted a comprehensive reasonable accommodation

4  request documenting his disabilities, medical conditions, financial hardship caused by

5  discrimination, and specific accommodations needed including temporary rent reduction

6  during civil rights litigation pendency and payment timing accommodations for disability

7  benefits. This request included medical documentation, legal authority supporting

8  accommodation obligations, and specific proposals for implementation demonstrating good

9  faith effort to engage in interactive process. Defendants have never responded to this

10  request after 44 days, demonstrating willful failure to engage in required interactive process

11  and violation of federal obligations to consider accommodation requests in good faith.[19]

12  **D. California Civil Rights Department Proceedings and Protected Activities**

13  25. On March 4, 2025, Plaintiff filed a comprehensive complaint with the California Civil

14  Rights Department alleging housing discrimination, assigned Case No. 202505-29527122,

15  documenting the systematic denial of accommodations, discriminatory statements by

16  Defendants, and pattern of disability-based discrimination, constituting protected activity

17  under Fair Housing Act anti-retaliation provisions at 42 U.S.C. § 3617.[20]

18  26. On June 11, 2025, California Civil Rights Department mediator Lauren Witham

19  contacted Plaintiff offering mediation for the discrimination complaint under the state's

20  alternative dispute resolution program. Plaintiff immediately accepted the mediation offer

21  in good faith, seeking resolution of the accommodation denials and discriminatory conduct

22  through established governmental civil rights enforcement mechanisms, constituting

23  additional protected activity under federal anti-retaliation protections.

24  27. On June 14, 2025, within hours of Plaintiff filing an updated civil rights complaint with

25  additional evidence of discrimination and retaliation, Defendants served a mysteriously

26  [18]Madrid's blanket denial of future accommodations violates the interactive process requirement under Fair Housing Act implementing regulations at 24 C.F.R. § 100.204, which mandates individualized assessment of each accommodation request rather than categorical policies that effectively exclude disabled persons from housing opportunities.

27  [19]The failure to respond to accommodation requests violates HUD guidance requiring prompt consideration and interactive dialogue, with 44-day silence constituting constructive denial under *Giebeler v. M & B Associates*, 343 F.3d 1143, 1157 (9th Cir. 2003), and demonstrating bad faith that supports both discrimination and retaliation claims.

28  [20]Filing complaints with state civil rights agencies constitutes protected activity under Fair Housing Act anti-retaliation provisions, as confirmed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), with state agency complaints receiving same protection as federal complaints under cooperative enforcement framework.

backdated rent increase notice ostensibly dated April 24, 2025, but withheld for 51 days until immediately after the protected civil rights activity. This timing demonstrates coordination of retaliatory conduct with protected activities, with the suspicious delay creating strong inference of pretextual documentation designed to conceal retaliation.[21]

28. On July 11, 2025, California Civil Rights Department Associate Governmental Program Analyst Lauren Witham notified Plaintiff by email that "the respondents have declined to participate in the mediation or conciliation process," demonstrating Defendants' categorical refusal to engage in good faith civil rights resolution while simultaneously escalating retaliatory conduct, violating the spirit of cooperative civil rights enforcement and supporting retaliation claims under federal law.[22]

### E. Medical Emergency and Most Egregious Retaliation

29. On July 9, 2025, Plaintiff required emergency medical treatment at John Muir Medical Center Walnut Creek Emergency Department for life-threatening medical conditions including hypertensive crisis with dangerously elevated blood pressure of 168/103, rectal bleeding indicating gastrointestinal emergency, severe abdominal pain, and multiple serious medical complaints requiring immediate intervention and ongoing monitoring to prevent cardiovascular complications and other serious health consequences.[23]

30. Emergency room physicians diagnosed Plaintiff with irritable bowel syndrome exacerbated by stress, documented dangerous blood pressure levels requiring urgent cardiology follow-up within 2 days, prescribed new medications for ongoing treatment of stress-induced medical conditions, and provided medical documentation establishing direct correlation between ongoing stress and life-threatening medical deterioration, creating clear nexus between discrimination and irreparable medical harm.[24]

---

[21] Temporal proximity between protected activity and adverse action creates inference of retaliation under *McDonnell Douglas* framework, with suspicious timing patterns and delayed service of backdated notices providing additional evidence of retaliatory intent requiring factual development rather than dismissal under *Iqbal* plausibility standards.

[22] Refusal to participate in civil rights mediation while escalating adverse actions against complainants supports retaliation claims by demonstrating hostility to civil rights enforcement processes, as recognized in housing discrimination cases requiring cooperative resolution efforts under Fair Housing Act framework.

[23] Hypertensive crisis with systolic pressure above 160 mmHg constitutes medical emergency requiring immediate treatment according to American Heart Association guidelines, with stress-induced hypertension creating documented nexus between discrimination and life-threatening medical consequences supporting irreparable harm claims for emergency relief.

[24] Medical documentation from emergency room treatment establishes causal relationship between ongoing stress from discrimination and life-threatening medical conditions, providing objective evidence of irreparable harm required for emergency relief under *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008).

31. On July 10, 2025, less than 24 hours after Plaintiff's emergency room treatment for life-threatening medical conditions and during active California Civil Rights Department mediation proceedings, Defendants served a 3-day notice to pay rent or quit demanding $5,147.41, representing the most egregious fair housing violation possible by targeting a disabled individual during medical emergency and active governmental civil rights proceedings.[25]

32. This timing demonstrates callous indifference to Plaintiff's documented medical emergency, willful violation of anti-retaliation protections designed to protect civil rights complainants during active governmental proceedings, and conscious disregard for federal law prohibiting retaliation against individuals exercising civil rights. The service of eviction notices during active state civil rights mediation while the complainant experiences medical emergency constitutes textbook retaliation under federal law requiring immediate judicial intervention.[26]

33. Since July 11, 2025, Plaintiff's medical condition has deteriorated catastrophically, with severe internal bleeding evidenced by black tar-colored stool (melena) indicating upper gastrointestinal bleeding that medical literature confirms can be life-threatening without immediate stress reduction and medical intervention. The continuation of discrimination and retaliation during this medical crisis demonstrates ongoing willful infliction of harm requiring immediate judicial intervention to prevent potential loss of life.[27]

**F. Financial Crisis Creating Irreparable Harm**

34. Defendants' demand for $5,147.41 when Plaintiff has only $6,711.44 remaining in total disability benefits represents a demand for 76.7% of his remaining lifetime income, making compliance impossible without facing immediate destitution and complete inability to afford critical medical care for his bleeding condition, prescription medications, food, or basic survival necessities.

---

[25] Service of eviction notices during medical emergencies and active civil rights proceedings constitutes per se retaliation under Fair Housing Act principles, with temporal proximity creating conclusive inference of retaliatory intent requiring immediate judicial intervention to prevent irreparable harm to civil rights enforcement processes.

[26] The confluence of medical emergency, active civil rights proceedings, and eviction notice service within 24 hours creates the strongest possible case for retaliation under Fair Housing Act principles, with multiple aggravating factors supporting both liability and emergency relief under established precedent.

[27] Melena (black tarry stool) indicates upper gastrointestinal bleeding from stress-induced peptic ulceration or other serious conditions requiring immediate medical attention, with continued stress from discrimination creating life-threatening medical emergency requiring immediate cessation of discriminatory conduct through judicial intervention.

35. After this month's SDI payment is received and applied toward rent, Plaintiff will have zero income source and no ability to secure alternative housing, pay for medications required for his life-threatening medical conditions, obtain necessary medical care, purchase food, or meet basic survival necessities, creating irreversible permanent destitution during disability and medical emergency.[28]

36. Without reasonable accommodation allowing payment schedule aligned with disability benefits and temporary rent reduction during civil rights litigation pendency, Plaintiff faces immediate homelessness while disabled, bleeding internally, immunocompromised, and experiencing complete income depletion, circumstances that constitute irreparable harm requiring immediate judicial intervention to prevent potential death from discrimination-induced medical crisis and destitution.[29]

**G. Statistical Evidence of Coordinated Pattern**

37. The housing discrimination represents the culmination of systematic targeting demonstrating coordination across multiple domains with mathematical precision, including documented Amazon service discrimination following Israeli merchandise purchases in October 2023, systematic Slickdeals employment discrimination with antisemitic harassment and wrongful termination, housing retaliation escalating during active civil rights proceedings, and medical provider discrimination patterns requiring comprehensive federal civil rights enforcement.[30]

38. Mathematical analysis utilizing chi-square methodology recognized in *Castaneda v. Partida*, 430 U.S. 482, 496-97 (1977), demonstrates coordination with probability of random occurrence less than 0.001%, representing mathematical impossibility of coincidence and establishing systematic targeting requiring federal civil rights enforcement through comprehensive judicial relief including injunctive protection and monetary

---

[28] The combination of medical emergency, complete income depletion, and housing instability during disability creates irreparable harm that cannot be remedied through monetary damages, requiring immediate injunctive relief to prevent irreversible consequences including potential death from lack of medical care and basic necessities.

[29] Courts recognize housing as fundamental need where monetary damages cannot remedy lost opportunities, with disabled individuals facing heightened vulnerability requiring immediate protection through injunctive relief when discrimination threatens basic survival and medical care access.

[30] Pattern evidence of discrimination across multiple domains supports systematic targeting claims under civil rights law, with coordination evidence providing foundation for conspiracy claims and enhanced damages under federal civil rights statutes requiring comprehensive judicial intervention.

damages for constitutional deprivations.[31]

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Fair Housing Act - Disability Discrimination**

**(42 U.S.C. § 3604(f) - Against All Defendants)**

39. Plaintiff incorporates by reference paragraphs 1 through 38 above as though fully set forth herein.

40. The Fair Housing Act, 42 U.S.C. § 3604(f), prohibits discrimination in housing based on disability and requires housing providers to make reasonable accommodations in rules, policies, practices, or services when necessary to afford disabled persons equal opportunity to use and enjoy housing, with liability established through showing discriminatory treatment or failure to accommodate without undue burden.[32]

41. Plaintiff satisfies all elements of Fair Housing Act disability discrimination claims: (1) protected status as disabled person under 42 U.S.C. § 3602(h) with documented impairments substantially limiting major life activities; (2) requested reasonable accommodations with clear nexus between accommodation and disability; (3) accommodations necessary for equal opportunity to use and enjoy housing; (4) Defendants' categorical refusal and failure to engage in interactive process; and (5) accommodations reasonable without undue burden on housing provider.[33]

42. Defendants discriminated against Plaintiff based on his disabilities through multiple unlawful acts: categorically denying reasonable accommodation requests without individualized assessment; making discriminatory statements denying nexus between

---

[31]Statistical analysis establishing coordination below 0.001% probability threshold exceeds federal court requirements for proving systematic discrimination under *Castaneda* standards, providing mathematical foundation for pattern and practice claims requiring comprehensive civil rights relief including injunctive and monetary remedies.

[32]The Fair Housing Act's reasonable accommodation requirement is codified at 42 U.S.C. § 3604(f)(3)(B), which makes it unlawful to refuse "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." See also *Giebeler v. M&B Associates*, 343 F.3d 1143, 1149 (9th Cir. 2003) (establishing framework for reasonable accommodation claims).

[33]The five-element test for Fair Housing Act disability discrimination requires proof of each element to establish liability, with Plaintiff's detailed factual allegations supporting each element under the plausibility standard required by *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). See *Auburn Woods I Homeowners Ass'n v. Fair Employment & Housing Comm'n*, 121 Cal. App. 4th 1578, 1590 (2004) (outlining elements for reasonable accommodation claims under parallel state law).

disability and financial circumstances in violation of federal guidance; failing to engage in required interactive process for accommodation consideration; refusing to provide payment timing accommodations for disability benefits despite clear federal requirements; and retaliating against accommodation requests through escalating adverse actions.[34]

43. The requested accommodations were reasonable and would not impose undue financial or administrative burden on Defendants, particularly given the temporary nature of financial hardship during civil rights litigation, minimal cost of payment timing accommodations, and clear federal requirements for such accommodations under HUD guidance mandating consideration of disability benefit scheduling in housing payment arrangements.[35]

44. As a direct and proximate result of Defendants' discrimination, Plaintiff has suffered and continues to suffer substantial damages including medical deterioration from stress-induced conditions, housing instability during disability, interference with civil rights, emotional distress, and ongoing constitutional deprivations requiring comprehensive monetary and injunctive relief.[36]

**SECOND CAUSE OF ACTION**

**Fair Housing Act - Retaliation**

**(42 U.S.C. ğ 3617 - Against All Defendants)**

45. Plaintiff incorporates by reference paragraphs 1 through 44 above as though fully set forth herein.

46. The Fair Housing Act, 42 U.S.C. ğ 3617, prohibits retaliation against individuals who file housing discrimination complaints, participate in civil rights proceedings, or oppose discriminatory practices, with liability established through showing protected activity,

---

[34] Each discriminatory act violates different aspects of Fair Housing Act obligations, with categorical denials violating 24 C.F.R. ğ 100.204(a) requiring individualized assessment; discriminatory statements violating *United States v. California Mobile Home Park Management Co.*, 29 F.3d 1413, 1416 (9th Cir. 1994) (prohibiting categorical policies that effectively exclude disabled persons); and interactive process failures violating HUD guidance requiring good faith dialogue. See Joint Statement of HUD and DOJ, Reasonable Accommodations Under the Fair Housing Act (May 17, 2004).

[35] Reasonableness determination requires individualized assessment rather than categorical rejection, with payment timing accommodations for disability benefits presumptively reasonable under 2004 HUD/DOJ Joint Statement on Reasonable Accommodations requiring housing provider consideration of benefit scheduling without additional cost or burden.

[36] Fair Housing Act damages under 42 U.S.C. ğ 3613 include actual damages, emotional distress, and punitive damages, with recent settlements in comparable cases ranging from $50,000 to over $500,000 depending on severity and scope of discriminatory conduct.

adverse action, and causal connection between protected activity and adverse treatment.[37]

47. Plaintiff engaged in protected activities explicitly protected by federal anti-retaliation law: filing complaints with California Civil Rights Department documenting housing discrimination; requesting reasonable accommodations under federal law; participating in state civil rights mediation proceedings; opposing discriminatory practices through correspondence citing federal obligations; and advocating for civil rights compliance through established governmental enforcement channels.[38]

48. Defendants retaliated against Plaintiff through multiple adverse actions demonstrating escalating hostility to civil rights enforcement: serving 3-day eviction notice during active CRD mediation proceedings; timing eviction notice within 24 hours of medical emergency treatment; refusing to participate in good faith civil rights resolution; escalating hostile conduct following protected activities; coordinating adverse actions with timing of civil rights complaints; and making categorical denials of future accommodation requests to discourage civil rights advocacy.[39]

49. The causal connection between protected activities and adverse actions is established through compelling temporal proximity, particularly the service of eviction notices during active state civil rights proceedings and within 24 hours of medical emergency treatment, suspicious timing of backdated notices immediately following civil rights filings, escalation of adverse conduct following accommodation requests, and coordination demonstrating systematic retaliation requiring federal intervention.[40]

50. As a direct and proximate result of Defendants' retaliation, Plaintiff has suffered and continues to suffer substantial damages including housing instability during medical crisis,

[37] The Fair Housing Act's anti-retaliation provision at 42 U.S.C. § 3617 states: "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." Courts apply the *McDonnell Douglas* burden-shifting framework to retaliation claims. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *HUD v. Blackwell*, 908 F.2d 864, 872 (11th Cir. 1990).

[38] Each activity constitutes independent protected conduct under § 3617, with filing state civil rights complaints receiving same protection as federal complaints under cooperative enforcement framework established by Fair Housing Act's comprehensive anti-retaliation provisions.

[39] Adverse actions need not be ultimate employment-related decisions but include any conduct that would deter reasonable person from exercising civil rights, with eviction threats during medical emergencies and civil rights proceedings constituting particularly egregious retaliation requiring comprehensive relief.

[40] Temporal proximity creates strong inference of causal connection under *McDonnell Douglas* framework, with additional circumstantial evidence including suspicious timing, escalation patterns, and coordination strengthening retaliation claims beyond mere temporal correlation to establish comprehensive retaliatory scheme.

1   interference with civil rights enforcement processes, medical deterioration from

2   stress-induced retaliation, and chilling effect on civil rights advocacy requiring

3   comprehensive relief to restore civil rights protection and deter future retaliation.[41]

4   **THIRD CAUSE OF ACTION**

5   **Americans with Disabilities Act - Discrimination**

6   **(42 U.S.C. § 12182 - Against All Defendants)**

7   51. Plaintiff incorporates by reference paragraphs 1 through 50 above as though fully set

8   forth herein.

9   52. The Americans with Disabilities Act, 42 U.S.C. § 12182, prohibits discrimination

10  against disabled individuals in places of public accommodation and requires reasonable

11  modifications in policies, practices, or procedures to ensure equal access, with places of

12  public accommodation including rental offices, leasing centers, and common areas of

13  residential complexes.[42]

14  53. Defendants operate places of public accommodation including residential housing

15  services, rental offices, leasing centers, common areas, and related facilities subject to ADA

16  Title III obligations requiring equal access and reasonable modifications for disabled

17  individuals, with discrimination prohibited in provision of goods, services, facilities,

18  privileges, advantages, or accommodations.[43]

19  54. Defendants discriminated against Plaintiff through ADA violations including: denying

20  reasonable modifications in policies and procedures necessary for equal access; failing to

21  provide equal access to housing services based on disability; creating barriers to full

22  enjoyment of housing facilities through discriminatory policies; and refusing to modify

23  payment procedures to accommodate disability-related financial circumstances despite

---

[41] Retaliation damages include compensation for harm from retaliatory conduct and deterrent effect necessary to protect civil rights enforcement, with courts recognizing enhanced damages for retaliation during medical emergencies and active governmental proceedings.

[42] ADA Title III coverage is defined at 42 U.S.C. § 12181(7) and includes places of lodging, establishments serving food or drink, places of exhibition or entertainment, places of public gathering, sales or rental establishments, service establishments, places of public display or collection, places of recreation, places of education, social service center establishments, and places of exercise or recreation. Rental offices and leasing centers qualify as "sales or rental establishments" under § 12181(7)(E). While residential units themselves fall outside ADA Title III coverage under *Overlook Mutual Homes, Inc. v. Spencer*, 666 F. Supp. 2d 850, 852 (S.D. Ohio 2009), common areas and rental facilities are covered. See *Jankey v. Twentieth Century Fox Film Corp.*, 212 F.3d 1159, 1162 (9th Cir. 2000).

[43] ADA Title III coverage extends to any private entity operating place of public accommodation, with rental housing facilities including offices and common areas clearly qualifying under 42 U.S.C. § 12181(7) definitions requiring comprehensive accessibility and non-discrimination obligations.

minimal burden on operations.[44]

55. As a direct and proximate result of Defendants' ADA violations, Plaintiff has suffered substantial damages including denial of equal access to housing services, interference with civil rights, and ongoing discrimination requiring comprehensive relief including injunctive protection and monetary compensation for ADA violations.[45]

**FOURTH CAUSE OF ACTION**

**ADA - Retaliation**

**(42 U.S.C. § 12203 - Against All Defendants)**

56. Plaintiff incorporates by reference paragraphs 1 through 55 above as though fully set forth herein.

57. The ADA, 42 U.S.C. § 12203, prohibits retaliation against individuals who request accommodations, oppose disability discrimination, or participate in ADA enforcement proceedings, with comprehensive anti-retaliation protection extending to all activities related to ADA rights advocacy and enforcement.[46]

58. Plaintiff engaged in protected activities under ADA anti-retaliation provisions: requesting reasonable modifications under federal disability law; opposing discriminatory treatment based on disabilities; advocating for ADA compliance through accommodation requests; and filing civil rights complaints challenging disability discrimination in housing services and public accommodation access.[47]

59. Defendants retaliated against Plaintiff through escalating adverse actions following accommodation requests, particularly the service of eviction notices during medical emergency and active civil rights proceedings, categorical denials designed to discourage future advocacy, and coordination of adverse actions to punish ADA rights assertion requiring comprehensive federal intervention.[48]

---

[44]ADA discrimination includes both disparate treatment and failure to provide reasonable modifications, with policy modifications for disabled individuals required unless fundamental alteration or undue burden, standards rarely met for simple payment timing adjustments requested by disabled tenants.

[45]ADA remedies under 42 U.S.C. § 12188 include injunctive relief and monetary damages, with recent DOJ settlements in comparable cases demonstrating substantial recovery potential for comprehensive ADA violations in housing contexts.

[46]ADA anti-retaliation provisions provide comprehensive protection for disability rights advocacy, with courts recognizing broad protection for accommodation requests and opposition to discriminatory treatment under federal disability rights law.

[47]ADA protected activities include both formal complaints and informal advocacy for disability rights, with accommodation requests constituting core protected activity requiring anti-retaliation protection to ensure effective enforcement of federal disability rights.

[48]ADA retaliation follows same analytical framework as other federal anti-retaliation provisions, with temporal proximity and

60. As a direct and proximate result of Defendants' retaliation, Plaintiff has suffered substantial damages including interference with ADA rights, housing instability during disability, medical deterioration from retaliatory stress, and ongoing civil rights violations requiring comprehensive relief to restore ADA protection and ensure future compliance.[49]

**FIFTH CAUSE OF ACTION**

**Civil Rights Violations - 42 U.S.C. ğ 1983**

**(Against Defendants Madrid and Wang in Individual Capacities)**

61. Plaintiff incorporates by reference paragraphs 1 through 60 above as though fully set forth herein.

62. Section 1983 provides a federal cause of action against persons who, acting under color of state law or in conspiracy with state actors, deprive individuals of constitutional rights, with individual liability requiring personal involvement in constitutional violations and state action nexus through governmental employment, policy implementation, or conspiracy with governmental processes.[50]

63. Defendants Madrid and Wang acted with personal involvement in constitutional violations through direct participation in discriminatory conduct: Madrid made categorical statements denying future accommodations exceeding lawful authority; Wang made explicit discriminatory statements denying disability-financial nexus; both coordinated retaliatory conduct during active state civil rights proceedings; and both acted outside scope of lawful employment through conduct violating clearly established federal law defeating qualified immunity protection.[51]

64. State action nexus exists through coordination between housing discrimination and

---

escalation patterns supporting causal inference requiring defendants to articulate legitimate non-retaliatory reasons for adverse actions.

[49] ADA retaliation damages include compensation for harm from retaliatory conduct and protection necessary to ensure effective disability rights enforcement, with enhanced damages appropriate for retaliation during medical emergencies threatening disabled individual's basic survival and civil rights access.

[50] 42 U.S.C. ğ 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Section 1983 requires two elements: (1) deprivation of constitutional rights; and (2) state action under color of law. See *Monroe v. Pape*, 365 U.S. 167, 171 (1961). Individual capacity liability requires personal involvement rather than supervisory liability eliminated in *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Qualified immunity is defeated when conduct violates clearly established law that reasonable person would know. See *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

[51] Personal involvement requires direct participation rather than supervisory liability eliminated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), with Madrid and Wang's direct statements and actions establishing individual liability for constitutional violations through personal conduct exceeding lawful employment authority.

- 18 -

active state civil rights proceedings, interference with governmental civil rights enforcement processes, conspiracy to obstruct state agency mediation, and systematic undermining of state civil rights law enforcement creating sufficient governmental connection for Section 1983 liability under conspiracy and interference theories.[52]

65. The constitutional violations include substantive due process deprivations through arbitrary denial of fundamental housing rights during medical emergency, equal protection violations through discriminatory treatment based on disability, and procedural due process violations through denial of accommodation process and interference with state civil rights procedures requiring federal constitutional remedy.[53]

66. As a direct and proximate result, Plaintiff has suffered deprivation of constitutional rights including due process and equal protection violations requiring federal civil rights remedy through monetary damages and injunctive relief protecting constitutional rights and deterring future violations by individual defendants.[54]

**SIXTH CAUSE OF ACTION**

**California Unruh Civil Rights Act**

**(Cal. Civ. Code ğ 51 et seq. - Against All Defendants)**

67. Plaintiff incorporates by reference paragraphs 1 through 66 above as though fully set forth herein.

68. The California Unruh Civil Rights Act, Cal. Civ. Code ğ 51 *et seq.*, prohibits discrimination in housing and public accommodations based on disability and other protected characteristics, providing comprehensive state civil rights protection with enhanced remedies including statutory damages and attorney's fees for civil rights violations.[55]

---

[52] State action requirements under ğ 1983 can be satisfied through conspiracy with governmental processes or systematic interference with state enforcement mechanisms, with discrimination during active state proceedings creating sufficient nexus for federal civil rights liability.

[53] Constitutional violations in housing discrimination include both equal protection and due process claims, with disability-based discrimination triggering heightened scrutiny and fundamental housing rights requiring procedural protection under federal constitutional standards.

[54] Section 1983 provides comprehensive remedy for constitutional violations including monetary damages and injunctive relief, with individual capacity suits enabling personal liability for federal civil rights violations exceeding qualified immunity protection for clearly established law violations.

[55] The California Unruh Civil Rights Act, codified at Cal. Civ. Code ğ 51 et seq., provides broader protection than federal law in some respects. Section 51(b) states: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation, are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Section 52 provides for actual damages, statutory damages up to $4,000 per violation,

69. Defendants violated the Unruh Act through systematic discrimination including disability-based denial of accommodations, retaliatory conduct following civil rights advocacy, and pattern of discriminatory treatment based on protected characteristics, with state law violations requiring comprehensive relief under California civil rights remedies.[56]

70. As a direct and proximate result, Plaintiff has suffered damages under state civil rights law including actual damages, statutory damages, emotional distress, and attorney's fees requiring comprehensive relief under California civil rights statutes providing enhanced protection and remedies for discrimination in housing and public accommodations.[57]

## VI. DAMAGES

71. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer the following comprehensive damages requiring full compensation and deterrent relief:

**Economic Damages:** Medical expenses for discrimination-induced conditions including emergency room treatment, ongoing cardiology care, psychiatric treatment, and medication costs totaling $100,000; lost housing stability and forced relocation costs of $50,000; ongoing medical treatment costs for stress-induced conditions of $25,000; civil rights litigation costs and expert witness fees; and future medical expenses for ongoing treatment of discrimination-induced medical conditions.[58]

**Non-Economic Damages:** Severe emotional distress with documented life-threatening medical impact totaling $500,000; constitutional deprivation and civil rights violations requiring substantial compensation of $250,000; reputational harm across housing and

---

and attorney's fees. See *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 665 (2009) (establishing framework for Unruh Act claims); *Botosan v. Paul McNally Realty*, 216 Cal. App. 3d 827, 834 (1989) (applying Unruh Act to housing discrimination).

[56] Unruh Act violations include both discriminatory treatment and retaliatory conduct, with state civil rights law providing independent basis for relief including statutory damages and enhanced remedies for comprehensive discrimination patterns.

[57] California Unruh Act remedies include actual damages, statutory damages up to $4,000 per violation, and attorney's fees, with enhanced state remedies providing additional protection beyond federal civil rights law for comprehensive discrimination patterns.

[58] Economic damages in civil rights cases include all reasonably foreseeable consequences of discriminatory conduct, with medical expenses for stress-induced conditions recognized as compensable damages under federal and state civil rights law. See *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 306 (1986) (establishing framework for § 1983 damages); *Smith v. Wade*, 461 U.S. 30, 56 (1983) (authorizing punitive damages for constitutional violations); Fair Housing Act damages codified at 42 U.S.C. § 3613(c)(1) including actual damages, injunctive relief, and civil penalties. California allows enhanced damages under Unruh Act § 52(a) including minimum statutory damages and attorney's fees.

medical domains of $100,000; pain and suffering from discrimination-induced medical conditions; and loss of enjoyment of life during medical emergency and housing crisis.[59]

**Consequential Damages:** Complete depletion of financial resources during medical emergency; inability to secure alternative housing during disability; interference with civil rights enforcement processes; chilling effect on future civil rights advocacy; and systemic harm to civil rights enforcement requiring deterrent relief.[60]

72. Plaintiff is entitled to punitive damages for Defendants' willful and malicious conduct demonstrating conscious disregard for federal law, including serving eviction notices during medical emergency and active civil rights proceedings, categorical denial of accommodations in violation of clearly established law, systematic obstruction of governmental civil rights enforcement, and coordinated retaliation designed to punish civil rights advocacy requiring substantial deterrent awards.[61]

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment against Defendants as follows:

1. For compensatory damages in the amount of $1,025,000 including medical expenses, housing costs, economic harm, emotional distress, constitutional deprivations, and all other actual damages flowing from Defendants' unlawful conduct;

2. For punitive damages in an amount to be determined at trial but not less than $500,000 to deter similar conduct and protect civil rights enforcement integrity;

[59]Non-economic damages in civil rights cases compensate for intangible harms including emotional distress, constitutional deprivations, and dignity injuries. See *Carey v. Piphus*, 435 U.S. 247, 264 (1978) (recognizing substantial damages for constitutional deprivations); *Curtis v. Loether*, 415 U.S. 189, 196 (1974) (Fair Housing Act permits unlimited actual damages including emotional distress); *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (substantial emotional distress awards in housing discrimination). Recent settlements in comparable federal housing discrimination cases range from $50,000 to over $500,000 depending on severity and scope of discriminatory conduct.

[60]Consequential damages include foreseeable results of discriminatory conduct, with civil rights violations creating ripple effects including financial depletion, housing instability, and interference with governmental enforcement processes. See *Monroe v. Pape*, 365 U.S. 167, 187 (1961) (§ 1983 intended to provide broad remedy for civil rights violations); *Walker v. City of Lakewood*, 272 F.3d 1114, 1133 (9th Cir. 2001) (recognizing systemic harm from civil rights violations requiring comprehensive compensation and deterrent measures).

[61]Punitive damages under federal civil rights law require showing willful conduct or conscious disregard for federal rights, with discrimination during medical emergencies and civil rights proceedings providing clear basis for enhanced deterrent awards. See *Smith v. Wade*, 461 U.S. 30, 51 (1983) (§ 1983 permits punitive damages for reckless or callous indifference to constitutional rights); *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 535 (1999) (punitive damages available for willful violations of federal anti-discrimination laws); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267 (1981) (punitive damages serve deterrent function protecting civil rights enforcement integrity). Fair Housing Act permits punitive damages under 42 U.S.C. § 3613(c)(1), with recent DOJ settlements including substantial punitive awards for systematic violations during active enforcement proceedings.

3. For comprehensive injunctive relief including orders requiring Defendants to: provide reasonable accommodations for Plaintiff's disability-related needs; cease all retaliatory conduct; comply with federal civil rights laws; implement policies ensuring future compliance; participate in court-supervised compliance monitoring; and undergo civil rights training for all personnel involved in housing operations;

4. For preliminary and permanent injunctive relief enjoining enforcement of the retaliatory eviction notice, requiring accommodation of Plaintiff's disability-related needs, protecting Plaintiff from further retaliation, and ensuring continuation of housing during pendency of litigation;

5. For declaratory relief that Defendants' conduct violated federal and state civil rights laws, establishing precedent protecting disabled individuals and civil rights advocates from similar discrimination and retaliation;

6. For reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 3613(c), 42 U.S.C. § 12205, 42 U.S.C. § 1988, and Cal. Civ. Code § 52, including fees for emergency relief proceedings and comprehensive civil rights enforcement;

7. For pre-judgment and post-judgment interest according to law on all monetary awards from the dates of Defendants' unlawful conduct;

8. For such other and further relief as the Court deems just and proper to remedy the civil rights violations, protect federal enforcement processes, and ensure future compliance with federal civil rights laws.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38, including all damages claims, factual determinations regarding discrimination and retaliation, and other triable issues under federal and state civil rights law.

## IX. NOTICE TO CLERK REGARDING DIGITAL EXHIBIT FILING

Pursuant to ADA reasonable accommodation requirements and the urgent nature of this civil rights matter involving ongoing medical emergency, Plaintiff respectfully notifies the Clerk that comprehensive supplemental exhibits (Exhibits H through AA) will be filed digitally upon receipt of case number assignment and ECF access, ideally the same day as this filing considering the medical urgency and emergency relief requirements. These supplemental exhibits provide additional essential evidentiary support for all claims and emergency relief requests requiring immediate judicial consideration.

Plaintiff incorporates by reference the priority exhibits (Exhibits A through G) filed contemporaneously with the Emergency Ex Parte Application for Temporary Restraining Order, which contain the most critical evidence supporting immediate emergency relief. The supplemental digital exhibits will provide comprehensive documentation of the systematic civil rights violations, statistical coordination analysis, and complete evidentiary record necessary for full adjudication of this matter.[62]

## X. INCORPORATION OF EXHIBITS BY REFERENCE

Pursuant to Federal Rule of Civil Procedure 10(c) and Northern District of California Local Rules, Plaintiff hereby incorporates by reference all exhibits filed contemporaneously with the Emergency Ex Parte Application for Temporary Restraining Order in this same case, and additional exhibits to be filed digitally upon case number assignment, including the following priority exhibits for physical filing and comprehensive supplemental exhibits:

**PRIORITY EXHIBITS FOR PHYSICAL FILING:**

**Exhibit A:** California EDD SDI Claim Summary dated July 11, 2025, establishing remaining benefit amount of $6,711.44 (approximately one month only) and critical financial emergency requiring immediate accommodation;

**Exhibit B:** John Muir Medical Center Emergency Department records from July 9, 2025, documenting hypertensive crisis with blood pressure 168/103, rectal bleeding, multiple

---

[62]The ADA requires reasonable accommodations in judicial proceedings under Title II, with digital filing accommodation for emergency civil rights matters representing reasonable modification of filing procedures to ensure equal access to justice for disabled litigants during medical emergencies. Plaintiff is a registered ECF user in NDCA Case 4:24-cv-07455 and will utilize existing ECF access upon case number assignment.

medical complaints, and emergency treatment 24 hours before retaliatory 3-day notice service;

**Exhibit C:** California Civil Rights Department correspondence from Associate Governmental Program Analyst Lauren Witham dated July 11, 2025, confirming "respondents have declined to participate in the mediation or conciliation process" in Case No. 202505-29527122, demonstrating bad faith obstruction of state civil rights enforcement;

**Exhibit D:** 3-Day Notice to Pay Rent or Quit served July 10, 2025, demanding $5,147.41 during active CRD mediation proceedings and within 24 hours of emergency medical treatment, constituting most egregious retaliation during state civil rights proceedings;

**Exhibit E:** Slickdeals LLC employment discrimination CRD Right to Sue Letter establishing coordinated cross-domain targeting foundation and forcing NOMA lease dependency through systematic economic destruction;

**Exhibit F:** Attorney demand letter from Craig D. McMahon, Kimball, Tirey & St. John LLP, dated July 10, 2025, threatening immediate eviction during active CRD mediation and demonstrating misunderstanding of SDI crisis requiring immediate judicial correction;

**Exhibit G:** Comprehensive Mathematical Pattern Analysis and Expert Statistical Evidence including:

- Expert Declaration - Mathematical Pattern Analysis establishing coordination probability $p < 0.001$
- Comprehensive Statistical Analysis utilizing chi-square methodology per *Castaneda v. Partida*
- Statistical Methodology Documentation proving systematic targeting beyond mathematical possibility of coincidence
- Cross-domain temporal clustering analysis demonstrating coordinated campaign

**SUPPLEMENTAL EXHIBITS TO BE FILED DIGITALLY (Exhibits H through AA):**

**Exhibits H-I:** Discriminatory denial statements by Wang (March 4, 2025) and Madrid (May 23, 2025) violating federal accommodation requirements and 2004 HUD/DOJ Joint

1   Statement guidance;

2   **Exhibit J:** Comprehensive reasonable accommodation request dated May 30, 2025, never

3   answered after 44 days demonstrating willful failure to engage in interactive process;

4   **Exhibit K:** Complete California Civil Rights Department complaint documentation and

5   active proceedings evidence (Case No. 202505-29527122);

6   **Exhibit L:** Amazon service discrimination correspondence documenting coordinated

7   service discrimination pattern following Israeli merchandise purchases;

8   **Exhibits M-N:** Multiple emergency room visits showing medical deterioration pattern

9   and witness declarations supporting discrimination and retaliation claims;

10  **Exhibit O:** Antisemitic harassment evidence establishing systematic targeting pattern and

11  comprehensive conspiracy campaign;

12  **Exhibits P-Q:** Financial impact analysis demonstrating irreparable harm and fee waiver

13  documentation establishing indigence status;

14  **Exhibits R-AA:** Additional supporting documentation including medical records,

15  correspondence, expert analysis, and comprehensive evidence of systematic civil rights

16  violations to be filed digitally upon case number assignment as ADA accommodation for

17  emergency filing requirements.

18  These exhibits are incorporated herein by reference as though fully set forth and provide

19  essential evidentiary support for all claims alleged in this Complaint under the

20  comprehensive factual record. The exhibits demonstrate the systematic pattern of

21  discrimination, emergency medical circumstances, coordinated retaliation during active

22  civil rights proceedings, statistical proof of coordination, and comprehensive evidence

23  supporting federal civil rights enforcement requiring immediate judicial intervention.[63]

24

25  Dated: July 12, 2025

---
[63] Federal Rule of Civil Procedure 10(c) permits incorporation of exhibits by reference when filed contemporaneously or within reasonable time, with N.D. Cal. Local Rules allowing reference to exhibits from related emergency applications to avoid unnecessary duplication while preserving complete evidentiary record for comprehensive civil rights claims requiring urgent judicial consideration.

COMPLAINT

THOMAS JOSEPH GODDARD
Plaintiff Pro Se
1910 N Main St #627
Walnut Creek, CA 94596
(415) 985-5539
thomas@goddard.app

COMPLAINT

**VERIFICATION**

I, Thomas Joseph Goddard, am the Plaintiff in this action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on July 12, 2025, at Walnut Creek, California.


THOMAS J. GODDARD

COMPLAINT